# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE
2025 FEB 20 AM 11:42

Case No. _____

COMPLAINT

JURY TRIAL DEMANDED

LUIS DANNY SOTO,

        Plaintiff,

-against-

TESLA INC., a Texas company, SPACE EXPLORATION TECHNOLOGIES CORP., a Texas company, X CORP., a Texas company, OPENAI INC., a California company, THE BORING COMPANY, a Texas company, MUSK FOUNDATION, a Texas company, NEURALINK CORP., a California company, NEWS CORPORATION, a New York company, FOX TELEVISIONS STATIONS, LLC, a New York company, FOX SPORTS MEDIA GROUP, a California company, FOX SPORTS AUSTRALIA PTY LIMITED, an Australia company, NXE AUSTRALIA PTY LTD, an Australia company, NEWS GROUP NEWSPAPERS LTD, a Great Britain company, NEWS CORP UK & IRELAND LIMITED, a Great Britain company, TIMES NEWSPAPERS LTD, a Great Britain company, FOX CORPORATION, a New York company, FOX BROADCASTING COMPANY, LLC a New York company, FOX ENTERTAINMENT, a New York company, TUBI INC., a California company, TUBI MEDIA GROUP, a California company, NEWS UK BROADCASTING LIMITED, a Northern Ireland company, NOVA ENTERTAINMENT, an Australia company, ILLYRIA PTY LTD, an Australia company, DOW JONES & COMPANY INC., a New York company, REALTOR.COM, a California company, HARPERCOLLINS PUBLISHERS LLC, a New York company, REA GROUP LTD, an Australia company, ELON MUSK, an individual, KEITH RUPERT MURDOCH, an individual, LACHLAN KEITH MURDOCH, an individual, JAMES RUPERT JACOB MURDOCH, an individual, ROBERT JAMES DELL'ORO THOMSON, an individual,

        Defendants.

Plaintiff LUIS DANNY SOTO ("Plaintiff"), an individual, brings this action for damages against TESLA, INC. ("TESLA"), a Texas company, SPACE EXPLORATION TECHNOLOGIES CORP. ("SpaceX"), a Texas company, X CORP. ("X"), a Texas company, OPENAI INC. (OPENAI"), a California company, THE BORING COMPANY ("TBC"), a Texas company, MUSK FOUNDATION ("THE FOUNDATION"), a Texas company, NEURALINK CORP. ("NEURALINK"), a California company, NEWS CORPORATION ("NEWS CORP"), a New York company, FOX TELEVISIONS STATIONS, LLC ("FOX TEL"), a New York company, FOX SPORTS MEDIA GROUP ("FOX SPORTS MEDIA"), a California company, FOX SPORTS AUSTRALIA PTY LIMITED ("FOX SPORTS"), an Australia company, NXE AUSTRALIA PTY LTD ("NXE"), an Australia company, NEWS GROUP NEWSPAPERS LTD ("NEWS GROUP"), a Great Britain company, NEWS CORP UK & IRELAND LIMITED ("NEWS CORP UK"), a Great Britain company, TIMES NEWSPAPERS LTD ("TIMES"), a Great Britain company, FOX CORPORATION ("FOX CORP"), a New York company, FOX BROADCASTING COMPANY, LLC ("FOX BROADCASTING"), a New York company, FOX ENTERTAINMENT, a New York company, TUBI INC. ("TUBI"), a California company, TUBI MEDIA GROUP ("TUBI Group"), a California company, NEWS UK BROADCASTING LIMITED ("NEWS UK"), a Northern Ireland company, NOVA ENTERTAINMENT ("NOVA"), an Australia company, ILLYRIA PTY LTD ("ILLYRIA"), an Australia company, DOW JONES & COMPANY INC. ("DOW JONES"), a New York company, REALTOR.COM ("REALTOR"), a California company, HARPERCOLLINS PUBLISHERS LLC ("HARPERCOLLINS"), a New

3

York company, REA GROUP LTD, an Australia company, ELON MUSK ("ELON"), an individual, KEITH RUPERT MURDOCH ("RUPERT"), an individual, LACHLAN KEITH MURDOCH ("LACHLAN"), an individual, JAMES RUPERT JACOB MURDOCH ("JAMES"), an individual, ROBERT JAMES DELL'ORO THOMSON ("ROBERT"), an individual, and alleges as follows:

1. Evidence will show the Defendants involved have a history of illicit behaviors, history of illicit drug use, history of getting companies to cover for them, history of drug rehabbing covertly, history of drug rehabbing members of law enforcement illegally, history of rehabbing members of the City of New York Police Department (NYPD), Federal Bureau of Investigation (FBI), United States Secret Service et al.

2. Furthermore, evidence will show Defendants also have a history of getting fellow billionaires and celebrities to cover for them for, and take responsibility for drug rehabbing government officials, history of hush payments for such activities, including paying off witnesses and government officials to prevent criminal prosecution and lawsuits, and a history of clearing the field of political opponents for politicians.

3. Elon has a history of conducting experiments without consent, history of conducting experiments on unsuspecting strangers, and testing on unwilling participants.

4. Elon has made billionaires of dollars during this time and has enhanced his personal status and profile in large part by leveraging and getting concessions from politicians, government officials, members of law enforcement, businesses, celebrities and President Donald Trump for the pain and suffering of the Plaintiff being forced to drug rehabilitate those leveraged by others and those government officials that pretended to drug rehabilitate others when in reality it was the Plaintiff that did so unwillingly.

5. Other Defendants listed here have engaged in similar actions as Elon and have likewise benefitted. It is difficult to hold firms and individuals accountable when corrupt individuals in government have become intertwined with the private sector to prevent prosecution and ligation. The entanglement between Elon and law enforcement and government officials has led to delays that may have resulted in prosecutable measures taking place.

6.      From 2021 and through 2024, firms, universities, news and entertainment companies and governments have assaulted, threatened, harassed, stalked, endangered and discriminated against Plaintiff. The legal departments, personnel departments, company executives, company managers, company board members, company employees and company shareholders et al., have without Plaintiff's consent or knowledge, installed equipment in Plaintiff's home that is used to treat mental disorders common among drug abusers.

7.      This equipment was used on Plaintiff without Plaintiff's consent or knowledge. They allowed the equipment to be used by other companies, celebrities, athletes, politicians, including Donald Trump and his family and prospect politicians from law firms, local and state law enforcement and federal law enforcement including the FBI and Secret Service and the military.

8.      Elon and Rupert allowed the equipment to be used by its executives, managers, colleagues, employees and their families, friends, favorite universities, politicians, law enforcement officials et al.

9.      Collusion between these parties and others has occurred to defraud Plaintiff of Plaintiff's rights and these parties have conspired to accomplish something forbidden by law causing moral injury to Plaintiff.

10.     TESLA Chief Executive Officer, Elon made a deal with Plaintiff for $65,000,000,000 for himself and his family and executives from his firms and his friends and United States Senators: Ted Budd, Rand Paul, Thom Tills, Roy Johnson, Kyrsten Sinema, Jerry Moran, Roger Marshall, Susan Collins, Angus King, Mitch McConnell, Marsha Blackburn, Ted Cruz, Lindsey Graham, Mitt Romney, Marco Rubio et al., to use the same equipment Plaintiff was placed on post use.

11.     Elon insisted Plaintiff agree to the deal and told Plaintiff "our pay for my brother" and "I'll pay for republican senators" and later "I'm only paying for republicans, not democrats."

12. Other than the use described here, musk directed his companies: SpaceX and OpenAI to conduct experiments on the system using Plaintiff as an unwilling and nonconsensual test subject putting Plaintiff through space simulators such as a centrifuge meant to train astronauts using anthropomorphic test devices that left Plaintiff sick for weeks as it was random and repeated for months.

13. OpenAI and Neuralink work with brain-computer interface products and software such as artificial general intelligence and text-to-image and text-to-video software were used causing Plaintiff stress and embarrassment and leaving Plaintiff ill.

14. The equipment used to treat anxiety, panic attacks, depression, and sleep disorders associated with drug use was used repeatably and knowingly without Plaintiff's consent.

15. A black-market for law enforcement and politicians where cash, drugs, sex, company shares, real-estate, new homes, new apartments and political campaign fund raising were offered by VIPs in return for protection and favors in leniency against this drug crime and past and future drug offenses and sexual crimes against celebrities and co-workers and crimes against the public. These companies enhanced their profile with the political elite and law enforcement. They advanced their individual careers and enhanced their lives to the Plaintiff's detriment. Officials and VIPs put their colleagues, families, friends, university officials and officials from political action committees et al., on the system to accomplish these objectives.

16. Medical patient simulators, virtual medical patient simulators, crash test dummies, virtual crash test dummies, and other anthropomorphic test devices used in the automobile and medical industries were connected to the equipment.

17. These devices received multiple shots to the head, groin and spine repeatedly inflicted with fists, a sledgehammer, defibrillator, firearms fired and other weapons meant to affect

Plaintiff's physical and mental health and wellbeing in negative and adverse ways and eventually meant to kill Plaintiff.

18. A gas chromatography-mass spectrometry was used with the women of these companies and female family members of its executives, shareholders, employees and their lawyers leaving a rancid and putrid smell and taste that lingers and causes Plaintiff stress, embarrassment, pain and confusion.

19. Elon and Rupert and executives and managers and their families at TESLA – SpaceX – X – OpenAI – TBC – NEURALINK – MUSK FOUNDATION – FOX et al., encouraged and directed law enforcement to harass and intimidate and marginalize Plaintiff by getting local police officers and federal police officers to participate in a scheme where they requested personal information on Plaintiff, including medical records and shared it with others involved.

20. Employees of these companies went to Plaintiff's home and the home of family. They caused emotional distress and physical pain by passing intrusive video of themselves at work and other environments, including in intimate situations through the equipment to Plaintiff.

21. Videos contained images of children being tortured, sexually abused and killed. Pedophilia videos were put through regularly when these firms were on. Other videos contained males engaged in gay sex and women being raped.

22. Lookalike impersonators of Plaintiff were depicted engaging in acts of crime, rape and sex, including homosexual sex meant to alarm Plaintiff and damage Plaintiff's reputation. They attached gaming systems to their own equipment that caused pain and suffering by adding repetitive, violent, and intrusive materials meant to cause confusion, disorientation, and cognitive impairment.

23. These company executives and their celebrity employees bribed politicians, judges, prosecutors, and law enforcement officials in New York, New Jersey, and Connecticut with money, company shares, gifts, and services in a quid pro quo in return for forgiveness to this crime and others. Firms here contributed to a money account to bribe witnesses and others involved.

24. Plaintiff was prejudiced based on personal attributes and political affiliation by these companies. There executives and employees caused Plaintiff pain and suffering based on who had reserved time after them and their political party. Plaintiff's civil rights were violated based on Plaintiff's perceived race, religion, political association, political stance, gender and sexual orientation.

25. Plaintiff was told repeatedly that this was happening to Plaintiff because Plaintiff was not part of a certain group i.e., republican, democrat, black, Muslim or gay. Plaintiff received racist comments from these firms.

26. Plaintiff had convulsions when a program meant to treat Parkinson's disease and that can cause seizures was used. These companies conspired to injure, oppress, threaten, and intimidate Plaintiff. They attempted to hide their identity after using the system to circumvent responsibility.

27. Plaintiff was threatened with being framed using DNA and a "rape kit" first by Elon and then by others. Plaintiff was told his DNA would be collected and inserted into numerous private and public DNA, RNA, and MDNA databanks. Plaintiff was threatened with being infected with an infection by Elon and others such as members of government, police and his employees.

28. Musk and the Murdochs took part in these crimes against Plaintiff and used government resources to cause Plaintiff harm. Furthermore, they used their positions to direct mangers from

9

their firms to intentionally harm Plaintiff by having them constantly engage the equipment. They also directed officials and police to do the same.

29. They engage the illegally installed equipment in Plaintiff's home, including while on narcotics and under the influence of narcotics for gifts, services, and political campaign contributions. They did this repeatedly without Plaintiff's consent and without regard to Plaintiff's feelings nor wellbeing.

30. Plaintiff was threatened and harassed night and day by Elon and family and employees from tesla, SpaceX, X, OpenAI, tbc, NEURALINK, musk foundation et. Al., and by Lachlan, James, Robert and their families and employees from FOX et al. Plaintiff was also sent hundreds of hours of video of sexual and macabre content. All defendants appeared on camera regularly for more than two years.

## PARTIES

31. Plaintiff LUIS DANNY SOTO is, and at all relevant times herein was, an individual residing in New York.

32. Defendant ELON MUSK is, and at all relevant times herein was, an individual residing in California.

33. Defendant KEITH RUPERT MURDOCH is, and at all relevant times herein was, an individual residing in New York or Connecticut.

34.	Defendant LACHLAN KEITH MURDOCH is, and at all relevant times herein was, an individual residing in in New York or Connecticut.

35.	Defendant JAMES RUPERT JACOB MURDOCH is, and at all relevant times herein was, an individual residing in New York or Connecticut.

36.	Defendant ROBERT JAMES DELL'ORO THOMSON is, and at all relevant times herein was, an individual residing in New York or Connecticut.

37.	Defendant TESLA, INC. is, and at all relevant times herein was, a Texas company with its principal place of business in the State of Texas.

38.	Defendant SPACE EXPLORATION TECHNOLOGIES CORP. is, and at all relevant times herein was, a Texas company with its principal place of business in the State of Texas.

39.	Defendant X CORP. is, and at all relevant times herein was, a Texas company with its principal place of business in the State of Texas. X CORP. is a subsidiary of X HOLDINGS CORP.

40.	Defendant OPENAI, INC. is, and at all relevant times herein was, a California company with its principal place of business in the State of California.

41.	Defendant THE BORING COMPANY is, and at all relevant times herein was, a Texas company with its principal place of business in the State of Texas.

42.	Defendant NEURALINK CORP. is, and at all relevant times herein was, a California company with its principal place of business in the State of California.

43.	Defendant MUSK FOUNDATION is, and at all relevant times herein was, a Texas company with its principal place of business in the State of Texas.

44.	Defendant NEWS CORPORATION is, and at all relevant times herein was, a New York company with its principal place of business in the State of New York.

45. Defendant FOX TELEVISIONS STATIONS, LLC is, and at all relevant times herein was, a New York company with its principal place of business in the State of New York.

46. Defendant FOX SPORTS MEDIA GROUP is, and at all relevant times herein was, a California company with its principal place of business in the State of California.

47. Defendant FOX SPORTS AUSTRALIA PTY LIMITED is, and at all relevant times herein was, an Australia company with its principal place of business in Australia.

48. Defendant NXE AUSTRALIA PTY LTD is, and at all relevant times herein was, an Australia company with its principal place of business in Australia.

49. Defendant NEWS GROUP NEWSPAPERS LTD is, and at all relevant times herein was, an England, Great Britain company with its principal place of business in England, Great Britain.

50. Defendant NEWS CORP UK & IRELAND LIMITED is, and at all relevant times herein was, an England, Great Britain company with its principal place of business in England, Great Britain.

51. Defendant TIMES NEWSPAPERS LTD is, and at all relevant times herein was, an England, Great Britain company with its principal place of business in England, Great Britain.

52. Defendant FOX CORPORATION is, and at all relevant times herein was, a New York company with its principal place of business in the State of New York.

53. Defendant FOX BROADCASTING COMPANY, LLC is, and at all relevant times herein was, a New York company with its principal place of business in the State of New York.

54. Defendant FOX ENTERTAINMENT is, and at all relevant times herein was, a New York company with its principal place of business in the State of New York.

55. Defendant TUBI INC. and TUBI MEDIA GROUP are, and at all relevant times herein were, California companies with their principal place of business in the State of California.

56. Defendant NEWS UK BROADCASTING LIMITED is, and at all relevant times herein was, a Northern Ireland company with its principal place of business in Northern Ireland.

57. Defendant NOVA ENTERTAINMENT is, and at all relevant times herein was, an Australia company with its principal place of business in Australia.

58. Defendant ILLYRIA PTY LTD. is, and at all relevant times herein was, an Australia company with its principal place of business in Australia.

59. Defendant DOW JONES & COMPANY, INC. is, and at all relevant times herein was, a New York company with its principal place of business in the State of New York.

60. Defendant REALTOR.COM is, and at all relevant times herein were, California companies with their principal place of business in the State of California.

61. Defendant HARPERCOLLINS PUBLISHERS LLC is, and at all relevant times herein was, a New York company with its principal place of business in the State of New York.

62. Defendant REA GROUP LTD. is, and at all relevant times herein was, an Australia company with its principal place of business in Australia.

## JURISDICTION AND VENUE

62. This Court has original jurisdiction over the claims for relief asserted in this cross-complaint pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and some Defendants are not citizens of the same state as the Plaintiff.

63. This Court has personal jurisdiction over the Defendants under and consistent with the Constitutional requirements of Due Process in that the Defendants, acting directly or through his agent or apparent agent, committed one or more of the following: a. The transaction of any business within the state; b. The making of any contract within the state; c. The commission of a tortious act within this district and d. The ownership, use, or possession of any real estate in this state.

64. Pursuant to § 301 of the New York Civil Practice Law and Rules because all Defendants systematically and continuously conduct and solicit business within the State of New York and From 2021 to 2025, Defendants have consistently and purposefully availed themselves of the privilege of conducting activities within New York State, thus invoking the benefits and protections of New York law. In return for these benefits and protections, Defendants must submit to the burdens of litigation in New York.

65. This Court may exercise personal jurisdiction over Defendants pursuant to § 302 of the New York Civil Practice Law and Rules, including because, upon information and belief, all Defendants transact and solicit business within the State, have committed the tortious acts described in this Complaint within the State, and/or have committed such acts outside of the State causing injury to Plaintiff within the State.

66. This litigation arises from or relates to the tortious activities Defendants visited upon Defendants in the States of New York, Connecticut, New Jersey, California, Florida, and other States.

67. This tortious conduct violated United States Federal Rico Laws.

68. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events or omissions giving rise to these claims occurred in this District and because Defendants are subject to personal jurisdiction in this District.

69. Requiring Defendants to litigate these claims in this District does not offend traditional notions of fair play and substantial justice.

70. Plaintiff's claims arise from some conduct occurring by Defendants in New York.

71. Jerry Hall (Rupert's former spouse) and FOX employees: Ben Carson, Juan Williams, Dana Perino, Brian Kilmeade, Ainsley Earhardt, Dana Perino, Bill Hemmer, Harris Faulkner, Martha MacCallum, Greg Gutfeld, Jeanine Pirro, Jeff Gardere, Jesse Waters, Bret Baier, Maria Sara Bartiromo, Laura Ingraham, Sean Hannity, Piers Morgan, Dan Bowens, Steve Lacy, Ryan Kristafer, Rosanna Scotto, Nick Gregory, Audrey Puente, Sharon Crowley, Lisa Evers, Antwan Lewis, Linda Schmidt, Arthur Chi'en, Tucker Swanson Mcnear Carlson et al., were all seen on camera by Plaintiff.

72. The on-air talent was told to "hold him down." This meant not to allow anyone to log on to the account with Plaintiff on it so that their bosses could log back in at any time. Using and abusing the same account attached to Plaintiff. Meant to stay anonymous and continue to injure Plaintiff.

73. Elon and family and employees from Tesla, X, OpenAI, SpaceX, Neuralink and other companies associated with Elon, and Rupert, Lachlan, James and family and Fox employees went to NFL, MLB, NHL, NBA, WNBA, UFC and WWE training and health facilities as well as IOC Olympic Training facilities, physical rehabilitation facilities, drug and chemical rehabilitation facilities, elder care living facilities and prisons nationwide and throughout North America and overseas to use their equipment connected to Plaintiff.

74. Cleared by top FAA officials commercial and private flights were used. Private and commercial pilots participated early on with companies and celebrities for concessions like sex, drugs, company stocks and cash.

75. They ordered New York corrections – NYCDOC & NYSDOCCS – and FBI agents et al., to place inmates housed in prisons on the system and connected them to Plaintiff without Plaintiff's approval nor consent. These sessions lasted all day and all night for days and weeks on end leaving Plaintiff in physical agony and mentally exhausted, Plaintiff felt tortured and endangered for Plaintiff's health and life.

76. The Musk family and Murdoch family and their associates have a history of accessing New York State Police (NYSP), City Of New York Police Department (NYPD), including its Police Communications Technicians (CT); Department Of Investigation (DOI); Special Victims Unit (SVU); Internal Affairs (IA); Crime Scene Investigators (CSI); and Housing Bureau (NYHBP), Office Of The Sheriff Of The City Of New York (NYCSO), New York State Court Officers (NYSCO), Police Benevolent Association Of The City Of New York (PBA), New York State Fraternal Order Of Police (NYSFOP), Fire Department Of The City Of New York (FDNY), Port Authority Of New York And New Jersey Police Department (PAPD), New York City Department Of Corrections (NYCDOC), New York State Department Of Corrections And Community Supervision (NYSDOCCS), Metropolitan Transportation Authority Police Department (MTAPD), New York State Park Police (NYSPP), New York State University Police (NYSUP), New York Guard (NYG), New York Army National Guard (NYANG), New York Air National Guard (NY ANG), New York Naval Militia (NYNM), New York State Division Of Military And Naval Affairs (NYSDMNA), Israel Defense Force (IDF) and members of the IDF within law enforcement throughout the United States, private security firms, private

prison guards and their inmate populations, current and former military assets and other government law enforcement departments and law enforcement agencies across the country to go after and target their detractors and enemies.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1.  For a money judgment representing compensatory damages, including consequential damages, lost wages, earnings, and all other sums of money, together with interest on those amounts, in an amount to be proven at trial but in no event less than $65,000,000,000.

2.  For an award of money judgment for mental pain and anguish and severe and serious emotional distress, as applicable, in an amount to be proven at trial.

3.  For pre- and post-judgment interest.

4.  For punitive damages according to proof.

5.  For attorney's fees and costs incurred by Plaintiff, as applicable.

6.  For such other legal and equitable relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all causes of action so triable.

Dated: February 18, 2025
       New York, New York

 

LUIS DANNY SOTO

475-F BROWN PLACE

BRONX, NEW YORK 10454

NEWQUESTTHINKING@PROTON.ME

332.227.4049

19